LOVE, Judge.

STATEMENT OF THE CASE

On November 6, 2000, the appellant, Luis Corzo, was charged with one count of simple possession of crack cocaine. At his arraignment, Corzo pled not guilty. The court heard and denied his motions to suppress evidence and a statement made by the defendant after his arrest. The appellant later withdrew his not guilty plea. Corzo pled guilty as charged, but reserved his right under State v. Crosby, 388 So.2d 584 (La.1976), to appeal the trial court’s ruling on his suppression motions. The trial court sentenced him to two years at hard labor, suspended, and placed him on two years active probation. The court also denied his motion for reconsideration of sentence but granted his motion for appeal.
For the following reasons, we reverse the findings of the trial judge on the motion to suppress and remand for proceedings consistent with this ruling.

FACTS

On the evening of September 19, 2000, police officers were conducting a surveillance of 4210 S. Carrollton Avenue, Apt. C. While | ¡¡awaiting the issuance of a search warrant for that address, one officer observed the defendant Luis Corzo and Amir Yabarra drive up to the targeted apartment in a red Mazda which belonged to and was driven by Yabarra. The men went inside the apartment. After a few minutes, Corzo came out of the house, opened the driver’s side door, reached inside, and released the gas cap compartment of the car. Detective Robert Harr testified that he saw Corzo walk to the compartment and it appeared that Corzo removed something from his pocket and put it inside the compartment. Corzo closed the compartment, closed the car door, and walked back inside the apartment. A few minutes later, Corzo and Yabarra left the apartment, entered the Mazda, and drove from the scene.
The officer watching these movements radioed other officers who followed the Mazda down Carrollton. Yabarra ran the stop light at Banks Street, and the officers stopped the Mazda. The officers ordered Yabarra and Corzo out of the car, and one of the officers went to the gas cap compartment, opened it, and found inside a rock of crack cocaine. The officers arrested Corzo and Yabarra and advised them of their rights. The officers transported them to a police station where Corzo subsequently gave a statement wherein he admitted the cocaine in the gas cap compartment belonged to him and that Yabar-ra knew nothing of it.
Detective Jules Martin testified that he seized the contraband from the automobile. He further testified that he did not have a warrant to search the vehicle, nor did the owner give him consent. He testified that his search was based on the information given by Detective Harr that the defendant placed something in the gas compartment of the vehicle.
Corzo’s co-defendant, Agenor Defiguere-do, was charged with possessing marijuana and cocaine residue found inside the apartment, and |3the suppression hearing *75 involved not only the cocaine seized from the Mazda, but also the evidence seized from the apartment. Officers obtained a warrant to search the apartment based upon “traffic” going in and out of the apartment during the surveillance, as well as a controlled purchase of drugs from the apartment. Pursuant to the warrant, the officers seized from the house a bag of marijuana, a bag containing cocaine residue, a crack pipe and a metal push rod, and an utility bill in Defigueredo’s name. Also seized from the house was an identification card in Corzo’s uncle’s name.

ERRORS PATENT

A review of the record reveals no errors patent.
Assignment of Error 1
By his first assignment of error, the appellant contends the trial court erred by denying his motion to suppress the evidence. Specifically, he argues the officers had no probable cause to open the car’s gas cap compartment and seize the rock of crack cocaine contained therein. He also notes the officers did not get a warrant to search the car, nor did they obtain consent from Yabarra to search the car. Corzo was charged with possessing only the rock of cocaine found in the ear.
As noted above, the officers admitted they did not have consent to search the car, and they also admitted that they did not get a warrant prior to searching the car. Generally, the police cannot conduct a search without a warrant as guaranteed by the Fourth Amendment. Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). However, the Supreme Court has recognized an “automobile exception” to this requirement. Accordingly, if there was probable cause to search the vehicle and based on the surrounding facts a warrant would have been issued, no separate showing of exigency is required. State v. Toca, 99-1871 (La.App. 4 Cir. 9/6/00), 769 So.2d 665, 668 (citing United States v. Ross, 456 U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). Thus, the determining factor in this assignment is whether the officers had probable cause to believe there was contraband in the gas cap compartment.
In State v. Scull, 93-2360 (La.App. 4 Cir. 6/30/94) 639 So.2d 1239, the police received a tip that “Raul,” a Hispanic male, routinely traveled to Florida to pick up cocaine. Officers set up a surveillance of the residence designated as the storage site and saw a car with Florida license plates pass by the residence and park around the block. The officers saw two men get out of the vehicle carrying a package and enter the residence. The men stayed there a short time and then exited carrying a package. The men left the scene with the police following and eventually parked in front of the residence that the tip indicated was the sales facility. The officers saw one of the men, the defendant, place something inside the glove compartment. The officers stopped the men, even though they had broken no law, and searched the compartment, finding inside a substantial sum of money. The officers then obtained a warrant to search the storage facility. On review, this court found the officers did not have probable cause to search the glove compartment. At best, the officers had reasonable suspicion to stop the men. This court noted that the State failed to show that the officers knew either of the men in the ear was “Raul,” and the officers saw no other activity, which was consistent with drug activity by the defendant.
By contrast, this court found probable cause for a warrantless search of a vehicle in State v. Wimberly, 95-1445 (La.App. 4 Cir. 7/24/96), 678 So.2d 577. Officers received a tip that “Kim” was distributing *76 drugs from a certain address and that he drove a red Toyota with Texas license plates. The officers set up a surveillance of the residence and saw the defendant Isdrive up to the residence in a red Toyota with Texas license plates. The defendant used a key to enter the residence, and when he exited he was carrying a white bag. The officers approached him, and he quickly threw the bag into the car and walked away. The officers stopped the defendant, and one officer looked inside the car and saw a gun protruding from under the seat. The officer seized the bag and found it to contain drugs. This court found the officers had reasonable suspicion to stop the defendant and probable cause to believe the bag contained contraband.
The instant case more resembles the facts found in the Scull. Based solely on the facts found in the record, we find the police did not have probable cause to search the gas compartment of the vehicle. The arresting officers were radioed by detectives on the scene of a residence under surveillance for drug activity. The defendant was seen leaving the residence and opening the gas compartment. According to the officers testimony the vehicle was then stopped for running a red light. The gas compartment was almost immediately searched based on the statements made by Detective Harr that drugs had been placed there. The traffic stop was illusory and for the sole purpose-of determining whether the defendant had in fact placed drugs in the compartment. These factors alone would not have given the officers probable cause to search the vehicle.
The state contends that information contained in the “application for order of search” would demonstrate that the officers had probable cause. However, this document was not included in the original record. The state attached a copy of the document in a motion to supplement, which was granted. Despite the fact that the motion to supplement was granted, it has been established under Louisiana law that the appellate court may not | ^consider evidence not contained in the trial record. State v. Oubichon, 422 So.2d 1140 (La.1982).
The defendant, therefore, argues that the statement he made to the police once at the police station should be suppressed because it was the fruit of an illegal arrest. We agree.
Assignment of Error 2
By his second assignment of error, the appellant contends the trial court erred by failing to advise him at sentencing of the post-conviction relief provisions of La. C.Cr.P. art. 930.8. Because we find that there was no probable cause and the evidence should have been suppressed, we forgo ruling on the second assignment of error.
Accordingly, we reverse the findings of the trial judge on the motion to suppress and remand for proceedings consistent with this ruling.
REVERSED and REMANDED.
TOBIAS, J., dissents.